DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that granted permanent custody of Miriah W. to the Lucas County Children Services Board ("LCCS"). For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellants Curtis and Kimberly W., parents of Miriah, set forth the following assignments of error:
 {¶ 3} "1. The Trial Court erred when it terminated Appellants' parental rights in violation of their due process rights guaranteed under the Fourteenth Amendment of the United States Constitution.
 {¶ 4} "2. The Trial Court erred by allowing the original Guardian Ad Litem report which contained confidential information to be placed in the Court file with the confidential and prejudicial communication lined through by an unascertainable person and was still legible.
 {¶ 5} "3. The Trial Court erred in determining that there was clear and convincing evidence to support its decision to grant Lucas County Children Services permanent custody of Miriah pursuant to O.R.C. 2151.414.
 {¶ 6} "4. Appellants were given ineffective assistance of Counsel in that timely objections were not made by Counsel to testimony offered that was hearsay or hearsay within hearsay or the Guardian Ad Litem report at the Pre-Trial."
 {¶ 7} The facts that are relevant to the issues raised on appeal are as follows. Miriah W. was born to appellants on January 17, 2002 and, due to the parents' prior history with LCCS, the hospital made a referral to the agency while Miriah was still in the hospital. Because Miriah was born prematurely, she remained hospitalized for two months. On March 6, 2002, LCCS filed an ex parte motion requesting emergency shelter care of Miriah, which was granted. On March 7, 2002, the agency filed a "Complaint in Dependency: Permanent Custody, and Reasonable Efforts By-Pass; and Motion for Shelter Care Hearing." In its motion, LCCS stated that on September 20, 1997, appellants' five-month-old son Curtis W. III was taken to the hospital and found to be suffering from a retinal hemorrhage, healing rib fractures and an old left rib fracture, a healing right collar bone and a skull fracture. Curtis W. III died the following day. Appellant father was charged with throwing his infant son against a wall, and on May 1, 1998, was found guilty of involuntary manslaughter. Appellant father was sentenced to four years imprisonment but was released after 22 months, at which time appellants resumed their relationship. The complaint further alleged that two days after the death of Curtis W. III, LCCS filed a complaint in dependency, neglect and abuse in the matter of Devontel B., the two-year-old son of appellant mother, and Felicia W., the one-year-old daughter of appellants. Both children were living with appellants at that time. At a hearing held on November 6, 1997, Devontel was found to be an abused child and custody was awarded to his natural father. Felicia was found to be a dependent child and custody of her was awarded to another relative. Several months later, permanent custody of Devontel was awarded to LCCS. The complaint also alleged that appellant father continued to exhibit potentially violent behavior that could endanger Miriah, and was short-tempered, hostile and threatening to the Toledo Hospital staff. LCCS concluded that in light of the abuse and neglect of Miriah's siblings, Miriah was in danger of abuse or neglect if placed in the care and custody of her parents.
 {¶ 8} LCCS further asked the trial court to find that the agency was not required to make reasonable efforts to prevent removal or to reunify the child and family pursuant to R.C. 2151.419.
 {¶ 9} A hearing was held that same day and temporary custody of Miriah was granted to LCCS for placement in shelter care. The magistrate appointed a guardian ad litem for Miriah and attorneys for the parents. Appellants were granted supervised visitation with Miriah.
 {¶ 10} Following a hearing held on April 15, 2002, the magistrate held that LCCS was not required to make reasonable efforts in this matter to reunify or prevent removal from the home because parental rights as to Miriah's sibling Devontel had been involuntarily terminated in case no. JC98-7440.
 {¶ 11} A permanent custody hearing was held on May 16 and 23, 2002. At the conclusion of the adjudication phase, the trial court found Miriah to be a dependent child and the matter proceeded directly to disposition. Testimony was heard at disposition from appellant father's mother, appellants' LCCS caseworker, the teachers of two parenting classes appellants attended, a friend of appellant father's and from appellant father.
 {¶ 12} On June 18, 2002, the trial court filed a judgment entry granting permanent custody of Miriah to LCCS. The trial court found that in 1997, appellants' one-year-old daughter was found to be a dependent child and legal custody of the child was awarded to a relative; that LCCS obtained permanent custody of appellant mother's three-year-old son in 1998 after the child was found to be abused; that appellant father pleaded guilty to the involuntary manslaughter of appellants' five-month-old son and was sentenced to a four-year term of imprisonment; that appellant father returned to live with mother when he was released on parole; that LCCS determined to seek custody of Miriah immediately after her birth because of appellants' parenting history; that neither parent seemed to be able to comprehend the patterns of behavior which led to prior circumstances involving the other children; and that, although both parents had attended parenting classes, the classes were educational in nature and not therapeutic and there was no way to measure their progress, if any. The trial court found that an award of permanent custody to LCCS would be in Miriah's best interest. It further found that,
 {¶ 13} pursuant to R.C. 2151.414(E)(6) and (11), Miriah could not be placed with either of her parents within a reasonable time or should not be placed with either parent because of the prior permanent custody award of Miriah's sibling as well as father's involuntary manslaughter conviction involving another sibling. It is from that judgment that appellants appeal.
 {¶ 14} Appellants present two arguments in support of their first assignment of error. First, they assert that they were denied substantive due process because their parental rights were terminated based on a five-year-old conviction for involuntary manslaughter, confidential communication wrongly presented to the trial court, and highly subjective testimony riddled with hearsay. As to the first claim, a certified copy of the judgment entry finding appellant father guilty of the involuntary manslaughter of his son was admitted into evidence. R.C. 2151.414(E) sets forth several factors to be considered by the trial court when hearing a motion for permanent custody. If one or more of those factors exist as to each of the child's parents, the trial court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Those factors include whether either parent "has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child." R.C. 2151.414(E)(6).
 {¶ 15} In the case before us, the evidence showed and the trial court found that appellant father had pleaded guilty to involuntary manslaughter and that the victim was Miriah's brother. The trial court found that appellant father poses an ongoing danger to Miriah. The conditions of R.C. 2151.414(E)(6) therefore were met and the trial court clearly was justified in basing its decision in part on appellant father's prior conviction for the involuntary manslaughter of Miriah's brother.
 {¶ 16} Further, as to appellant mother, the trial court found that her parental rights were involuntarily terminated with respect to a sibling of Miriah. See R.C. 2151.414(E)(11). Based on those two findings, which were supported by clear and convincing evidence, we find appellants' first claim without merit.
 {¶ 17} Next, appellants claim that the trial court improperly considered confidential mediation communication that was presented to the court. Appellants refer to the original report submitted to the trial court by Miriah's guardian ad litem, which contained a reference to comments made by appellant father at a mediation session. This argument will be fully addressed under appellants' second assignment of error. Appellants also argue that the trial court based its decision in part on hearsay testimony improperly admitted at the adjudication and disposition hearing. Appellants do not, however, cite any specific examples of testimony which might have constituted hearsay and this argument is therefore found to be without merit.
 {¶ 18} In further support of their first assignment of error, appellants state that the trial court erred by basing its decision in part on testimony which showed a bias against appellant mother's constitutional right to marriage with appellant father. We find, however, that appellant mother's parental rights were not terminated because she is married to a man who was convicted of causing the death of their five-month-old child. As explained above, the trial court terminated mother's parental rights in large part because it found that mother has had parental rights involuntarily terminated pursuant to the provisions of R.C. 2151 with respect to one of Miriah's siblings. Appellants' claims that mother's parental rights were terminated solely because of father's prior conviction "concerning another child" and that the court's decision impinges upon her right to marry whomever she pleases are wholly without merit.
 {¶ 19} Based upon the foregoing, we find appellants' first assignment of error not well-taken.
 {¶ 20} In their second assignment of error, appellants assert that the trial court erred by allowing the original guardian ad litem report, which referred to confidential mediation communications, to be placed in the court's file. Appellants correctly state that the original report contained a recitation of confidential statements made by appellant father during mediation. They further assert that the report was placed in front of the magistrate at a pre-trial hearing and that it is "highly probable" that the magistrate read the report and based orders on the confidential information. The record reflects that one month later, at the adjudication and disposition hearing before the trial court, the issue of the report and its contents was brought to the attention of the judge by mother's attorney. The judge stated that the court had not reviewed the report and ordered that it be removed from the file, returned to the guardian and rewritten without the confidential information. The record contains a copy of the revised report, from which the confidential material had been deleted. It is the revised report that the trial court considered prior to making its ruling on disposition.
 {¶ 21} Appellants argue that it is "highly probable" that the magistrate read the original report and based pre-trial orders in whole or in part on the prejudicial confidential information. We note that the record is devoid of evidence that the magistrate either reviewed the report or based any decisions on the objectionable material in the original guardian's report. Any possible prejudice therefrom is purely speculative on appellants' part and without basis. Appellants have not shown that they were prejudiced by the original guardian ad litem's report and, accordingly, their second assignment of error is not well-taken.
 {¶ 22} In their third assignment of error, appellants assert that the trial court's decision was not supported by clear and convincing evidence. Appellants argue that father's conviction of the involuntary manslaughter of their son in 1997 did not constitute clear and convincing evidence that father was "an ongoing danger to the child or a sibling of the child" and that mother's loss of permanent custody of her son in 1998 also did not constitute clear and convincing evidence sufficient to support the trial court's decision.
 {¶ 23} In granting a motion for permanent custody, the trial court must find that there is clear and convincing evidence that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evidence, the court determines, by clear and convincing evidence, that one or more of those conditions exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with either parent. R.C.2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. Only if these findings are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 24} As we discussed above in our analysis of appellants' first assignment of error, the evidence of father's involuntary manslaughter conviction satisfied the conditions of R.C. 2151.414(E)(6) and the evidence of mother's loss of permanent custody of Miriah's brother satisfied the conditions set forth in R.C. 2151.414(E)(11). Based upon the foregoing, we find that LCCS presented sufficient evidence to create in the mind of the trial court a firm conviction that Miriah W. could not be placed with either parent within a reasonable time or should not be placed with either parent, and that it was in Miriah's best interest to grant permanent custody to Lucas County Children Services Board. Accordingly, appellants' third assignment of error is not well-taken.
 {¶ 25} In their fourth assignment of error, appellants assert that they received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington
(1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent.State v. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 26} Appellants first assert that timely objections were not made by counsel to the guardian ad litem's report at the pre-trial hearing. As we discussed above, the trial court appropriately and effectively handled the situation concerning the guardian's report when mother's counsel raised the issue before the adjudication hearing began. Further, the transcript of the pre-trial hearing to which appellants refer was not made a part of the record on appeal and we, therefore, are unable to consider the issue of objections that were or were not made during that hearing.
 {¶ 27} Appellants also argue that trial counsel was ineffective for failing to object to the testimony of one of the hospital staff members as to statements made by father while Miriah was still hospitalized. The statements recited by the witness constituted admissions by a party-opponent as defined by Evid.R. 801(D)(2) and therefore do not constitute hearsay. Accordingly, counsel was not ineffective for failing to object to the testimony and this argument is without merit. Appellants also argue that counsel should have objected to testimony of LCCS caseworker Amy Galvan, which they assert contained hearsay. While appellants list a series of page numbers from the trial transcript, they have failed to specify which statements on those pages allegedly constitute hearsay and do not provide any argument in support of their claim. This argument is therefore without merit.
 {¶ 28} Lastly, appellants assert that trial counsel should have cross-examined the social worker from the hospital, the LCCS caseworker and the guardian ad litem as to their professional experience and qualifications. As to the hospital social worker, a review of the transcript reveals that the LCCS attorney questioned her as to her experience at the hospital and her job responsibilities and that mother's counsel questioned her further as to her job duties. Neither counsel questioned the LCCS caseworker as to her job experience. As to the guardian ad litem, the record reflects that she did not testify at the trial, which explains counsel's failure to cross-examine her. As to specific questions asked of witnesses during direct or cross-examination, such a decision falls within trial counsel's discretion and is a matter of trial strategy. In this case, there is no evidence that the failure of mother's or father's counsel to cross-examine witnesses as to their professional qualifications caused appellants to be prejudiced. This argument is without merit.
 {¶ 29} Based on the foregoing, we find that appellants have not shown that their counsel's representation fell below an objective standard of reasonableness or that the results of the trial would have been different if counsel had cross-examined the witnesses as appellants argue they should have. Accordingly, appellants' fourth assignment of error is found to be not well-taken.
 {¶ 30} On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants equally.
JUDGMENT AFFIRMED.
Richard W. Knepper, J., Mark L. Pietrykowski, P.J., and George M.Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.